UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROCCO PETER A. DE SANTIS,                          :

                                           :

                     Plaintiff,                          :          10 Civ. 3508 (JPO) (GWG)

                                         :

     -against-                          :          REPORT AND

                                         :          RECOMMENDATION
CITY OF NEW YORK et al.,

                                         :

                    Defendants.                          :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Plaintiff Rocco Peter A. De Santis brought this action against Yoalis M. Jimenez and

other defendants to recover damages and costs for malicious prosecution, false arrest, and

intentional infliction of emotional distress.  Jimenez failed to answer and a default has been

entered against her.  For the following reasons, the default should be vacated and the complaint

should be dismissed.

I.      <u>BACKGROUND</u>

     A.     <u>Facts Relating to Liability</u>

     The following facts are taken from De Santis's complaint and are accepted as true for

purposes of this inquest.  <u>See</u> <u>City of N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d

Cir. 2011) ("[A] defendant who defaults thereby admits all 'well-pleaded' factual allegations

contained in the complaint.") (citation omitted); <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993)

("[F]actual allegations are taken as true in light of the general default judgment . . . .") (citation

omitted).

     On July 17, 2006, Jimenez appeared at the "Midtown North Detective Squadron" of the

New York Police Department and informed Detective Stephen Gurniak that De Santis was stalking and harassing her.  Complaint, filed Apr. 27, 2010 (Docket # 1) ("Compl."), ¶ 19. Jimenez told Gurniak that she had dated De Santis from October through November 2005.  Id. ¶ 114.  She claimed that from June 1, 2006 to July 16, 2006, she "received numerous unsolicited text messages, telephone calls, and email messages" from De Santis, id. ¶ 116 (internal quotation marks omitted), and that De Santis had appeared at her place of work, id. ¶¶ 120, 122, and at her home in New Jersey, id. ¶ 126.  She told Gurniak that she had instructed De Santis not to contact her.  Id. ¶ 118.  Jimenez claimed that De Santis caused "annoyance and alarm, harm to [her] emotional health, as well as fear that [her] employment was threatened."  Id. ¶ 124 (internal quotation marks omitted).  After filing a complaint with the police, Jimenez called De Santis and said that she would withdraw the complaint in exchange for money.  Id. ¶¶ 20–22.  Jimenez's allegations to the police "were intentionally falsified."  Id. ¶ 108.  Jimenez and De Santis had been dating from November 2, 2005 to July 16, 2006.  Id. ¶ 115.  She regularly initiated communications with him between June 1, 2006 and July 16, 2006, id. ¶ 117, and had never requested that he not contact her, id. ¶ 119.

At approximately 10:00 p.m. on July 30, 2006, Gurniak and his partner appeared at De Santis's apartment.  Id. ¶¶ 23–26.  They stated that De Santis had to accompany them to the precinct for questioning or he would be placed under arrest.  Id. ¶¶ 44–48.  Gurniak questioned De Santis about his relationship with Jimenez and her allegations of stalking and harassment.  Id. ¶¶ 49–64.  At 10:45 p.m. that evening, Gurniak arrested De Santis.  Id. ¶ 69.  De Santis was detained until 3:00 p.m the next day, July 31, 2006.  Id. ¶ 73.  He was arraigned on a criminal complaint charging two counts of Stalking in the Fourth Degree and 40 counts of Aggravated Harassment in the Second Degree.  Id. ¶ 77.  The Court issued a "restraining order" against De

Santis, and he was released on his own recognizance.  Id. ¶ 78.

On August 25, 2006, Jimenez met with Assistant District Attorney Ryan Connors.  Id. ¶ 79.  Jimenez told Connors that from June 1, 2006 to July 16, 2006, De Santis "engaged in a course of conduct directed at [causing Jimenez to fear] serious physical injury, the commission of a sex offense . . . , kidnapping, unlawful imprisonment and death . . . ."  Id. ¶ 128 (brackets omitted).  As a result of these new accusations, De Santis was charged with five additional criminal counts.  Id. ¶ 79.  Jimenez's new allegations were also false.  Id. ¶ 108.  During a meeting with De Santis's criminal defense attorney, Connors admitted that he knew "that a sizable component of the criminal complaint had been falsified by Jimenez."  Id. ¶ 80.  Connors failed to serve a Bill of Particulars and failed to "surrender evidence" to De Santis.  Id. ¶ 88.  As a result, on April 26, 2007, the case against De Santis was dismissed on speedy trial grounds pursuant to N.Y. Crim. Proc. § 30.30.  See id. ¶¶ 89, 91.

B.    Procedural History

On April 26, 2010, De Santis filed the complaint in this matter.  See Compl.[1]  On August 29, 2011, all federal claims were dismissed, leaving only state law claims against Jimenez for false arrest, malicious prosecution, and intentional infliction of emotional distress..  De Santis, 2011 WL 4005331, at *12; Compl. ¶¶ 147–64.[2]   De Santis had attempted to serve Jimenez in

---

[1]  As was explained in a previous decision, the complaint was deemed to have been filed on April 26, 2010.  See De Santis v. City of N.Y., 2011 WL 4005331, at *5 (S.D.N.Y. Aug. 29, 2011).

[2]  De Santis had also brought claims against the City of New York, Connors, the New York County District Attorney, Gurniak, Deputy Inspector William Matusiak, Chief of Detectives George F. Brown, Chief of Department Joseph J. Esposito, and the Office of the Chief of the City of New York Police Department alleging claims pursuant to 42 U.S.C. § 1983 of false arrest, malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, denial of equal protection, and municipal liability.  De Santis, 2011 WL

2010 but was unable to do so.  See id. at *5–6; Plaintiff's Reply to the Court's Request for

Additional Information Concerning Default Judgment, filed Oct. 5, 2011 (Docket # 34), ¶ 11.  At

that time, the presiding district judge, Judge Naomi Reice Buchwald, indicated that even if

Jimenez had been properly served dismissal might have been appropriate based on statute of

limitations grounds.  See De Santis, 2011 WL 4005331, at *6 n.2.  Without ruling on the issue,

she noted that "[t]he Second Circuit has recently stated that 'district courts may dismiss an action

sua sponte on limitations grounds in certain circumstances, where the facts supporting the statute

of limitations defense are set forth in the papers plaintiff himself submitted,'" id. (quoting

Walters v. Indus. & Commercial Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011)), and

that such an analysis would apply to De Santis's case because "the defendant has not even

arguably waived the limitations defense," id.

    After the district court extended the time to effectuate service, see De Santis v. City of

N.Y., 2011 WL 5109231, at *3 (S.D.N.Y. Oct. 27, 2011), a process server served Jimenez by

leaving the summons at her residence with an individual identified as "John Doe," who

purportedly spoke to Jimenez by telephone while the process server was present, and mailing a

copy to her last known address, see Affidavit of Service, filed Dec. 14, 2011 (Docket # 36);

Memorandum and Order, filed Jan. 5, 2012 (Docket # 39).  Jimenez failed to answer.

    On August 22, 2012, the Clerk of Court issued a certificate of default, see Clerk's

Certificate for Entry of Default Judgment, filed Aug. 22, 2012 (Docket # 49), and De Santis filed

a motion for a default judgment against Jimenez, see Notice of Motion for Entry of Default

Judgment, filed Aug. 22, 2012 (Docket # 50) ("Notice"); Memorandum of Law in Support of the

_____

4005331, at *1.

Plaintiff's Motion for Entry of Default Judgment, dated Aug. 21, 2012 (annexed to Notice).  On December 18, 2012, Judge J. Paul Oetken granted De Santis's motion.  See Order, filed Dec. 18, 2012 (Docket # 53).  A document labeled "default judgment" was entered, see Default Judgment, filed Dec. 26, 2012 (Docket # 56), and Judge Oetken referred the case to the undersigned for an inquest to determine damages, see Order of Reference to a Magistrate Judge, filed Dec. 18, 2012 (Docket # 54).

By Order dated December 21, 2012, this Court directed De Santis to make submissions supporting his request for damages against Jimenez.  See Scheduling Order for Damages Inquest, filed Dec. 21, 2012 (Docket # 55), ¶¶ 1–2.  A copy of the Order was mailed to Jimenez at her address of service.  De Santis submitted an affirmation and Proposed Findings of Fact seeking "no less than" $322,581.98 and "no more than" $442,581.98 in damages.  See Plaintiff's Proposed Findings of Facts [sic] and Conclusions of Law, filed Feb. 6, 2013 (Docket # 57), ¶ 12.

On June 7, 2013, the Court issued an Order informing De Santis that, on the face of the complaint, his claims were untimely, and that the default judgment might be vacated and his case dismissed unless he could explain why his claims were not barred by the statute of limitations.  See Order, filed June 7, 2013 (Docket # 58) ("June 7 Order").  De Santis responded on June 21, 2013, arguing that a three-year statute of limitation applied and that Jimenez had forfeited any statute of limitations defense.  See Declaration in Support of the Plaintiff's Assertion that the Claim Against Defendant Yoalis M. Jimenez is not Time-Barred, filed June 21, 2013 (Docket # 59) ("June 21 Decl."), ¶ 5.

II.    DISCUSSION

    A.    _Sua Sponte_ Dismissal on Statute of Limitations Grounds

Because statutes of limitations are not jurisdictional, courts have no obligation to raise

sua sponte the question of whether a claim has been timely asserted.  Day v. McDonough, 547 U.S. 198, 205 (2006), reh'g denied, 549 U.S. 1261 (2007); accord Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000).  In fact, as a general rule, courts refrain from raising statute of limitations defenses sua sponte.  See Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it sua sponte.") (citations omitted); see also United States v. Mitchell, 518 F.3d 740, 748 (10th Cir. 2008) (citing cases); Eriline Co. S.A. v. Johnson, 440 F.3d 648, 657 n.13 (4th Cir. 2006) (same).  The principle that the statute of limitations should not ordinarily be raised sua sponte arises from the adversarial nature of our justice system, which presumes that "parties [are] responsible for raising their own defenses."  Mitchell, 518 F.3d at 749 (citation omitted); accord John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008) ("[T]he law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver.") (citations omitted).

Nonetheless, the Second Circuit has on several occasions indicated that a court has the discretion to raise the defense sua sponte.  See Walters, 651 F.3d at 293; Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980), cert. denied, 451 U.S. 908 (1981).  The Supreme Court as well has recognized that a limitations defense may "'implicat[e] values beyond the concerns of the parties,'" McDonough, 547 U.S. at 205 (quoting Acosta, 221 F.3d at 123); accord Mitchell, 518 F.3d at 750 (court may raise defense sua sponte when "the issue implicates the court's power to protect its own important institutional interests") (citing Arizona v. California, 530 U.S. 392, 412 (2000)).  Thus, it has been held that a court has discretion to raise the statute of limitations for habeas corpus petitions sua sponte inasmuch as one of its purposes is "'streamlining the habeas review process and lending finality to state convictions.'"  Acosta,

6

221 F.3d at 123 (quoting Walker v. Artuz, 208 F.3d 357, 361 (2d Cir. 2000)).  Similarly, when screening the sufficiency of a complaint brought by a plaintiff proceeding (1) in forma pauperis pursuant to 28 U.S.C. § 1915, or (2) as a prisoner against a government entity pursuant to 28 U.S.C. § 1915A, a court may dismiss sua sponte where it is clear from the face of the complaint that the action is untimely.  See Pratts v. Coombe, 59 F. App'x 392, 393 (2d Cir. 2003) ("Dismissal is . . . appropriate [during a screening pursuant to 28 U.S.C. § 1915A] where the existence of an affirmative defense, such as statute of limitations, is plain from the plaintiff's pleading."); Pino v. Ryan, 49 F.3d 51, 53–54 (2d Cir. 1995) (affirming dismissal pursuant to 28 U.S.C. § 1915 as complaint was "facially time-barred").

        A claim made in the context of an inquest following a default implicates "values beyond the concerns of the parties" similar to those involved in the in forma pauperis and habeas screening functions.  In the case of an inquest, the Court is being called upon to enter a money judgment that may have serious consequences for the absent defendant.  Fed. R. Civ. P. 55 recognizes the sensitivity of this circumstance insofar as it does not permit a Court to award damages claimed by a party without review.  Instead, in cases where a sum certain is not sought, the Court must ensure that there is "a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (citations and internal quotation marks omitted).  Similarly, the district court in the default situation is required to review the legal sufficiency of a complaint.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability," Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), a "district court need not agree that the alleged facts constitute a valid cause of action," Mickalis Pawn Shop, LLC, 645 F.3d at 137 (citation and internal quotation marks omitted).  Rather, the district court

7

is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); accord Mickalis Pawn Shop, LLC, 645 F.3d at 137 n.23 (citing cases). Because "[e]ntry of default judgment does not preclude a party from challenging the sufficiency of the complaint on appeal," Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010) (citing cases), a district court's review of the sufficiency of the complaint preserves judicial resources by anticipating potential grounds for appeal. Additionally, it introduces an important element of fairness to the defaulting defendant who should not be burdened with a judgment on an insufficient complaint.

Consistent with these principles, a number of courts have found that they have the discretion to raise the statute of limitations sua sponte and have dismissed time-barred claims when presented with a request for a default judgment. See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm., 486 F. App'x 671, 671–72 (9th Cir. 2012) ("[T]he district court did not err by addressing the statute of limitations issue sua sponte in ruling on plaintiffs' motion for default judgment."); Donell v. Keppers, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (prior to entering default judgment, "it is proper for the Court to consider sua sponte whether Plaintiff's claims are barred by the relevant statute of limitations"); Joe Hand Promotions, Inc. v. Tu Minh Nguyen, 2011 WL 1642306, at *2 (N.D. Cal. May 2, 2011) (same); J & J Sports Prods., Inc. v. Martinez, 2010 WL 1038467, at *6 (N.D. Cal. Mar. 2, 2010) (same); see also Baker v. Cuomo, 58 F.3d 814, 819 (2d Cir.) (stating in dictum that dismissal is "appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations"), cert. denied, 516 U.S. 980 (1995), vacated in part on other grounds, 85 F.3d 919 (2d Cir. 1996) (en banc) (per curiam); Rampersad v. Deutsche Bank Sec., Inc., 2004 WL 616132, at *9 (S.D.N.Y. Mar. 30, 2004) (suggesting that time barred claims against defaulting

8

defendant may be dismissed when the defect is apparent from face of complaint, but dismissing

on other grounds).[3]  While we recognize that in many cases courts have declined to address a

statute of limitations defense in the context of a default judgment,[4] we believe that consideration

of the defense is appropriate in the instant case because the commencement of this action was

"well outside the applicable . . . limitations period, there are no applicable tolling provisions as a

matter of law . . . , and plaintiff has alleged no facts indicating a continuous or ongoing

violation . . . ."  Pino, 49 F.3d at 54 (citation omitted).  Accordingly, we now turn to examine

whether the complaint was timely filed.

B.     Applicable Limitations Periods

De Santis argues that his claims against Jimenez are not time barred because a three-year

statute of limitations applies.  June 21 Decl. ¶¶ 5(a), 6–11.  Citing Owens v. Okure, 488 U.S. 235

(1989), he contends "that when the laws of a state provide multiple statutes of limitation for

personal injury actions, the state's general-residual personal injury statute of limitation should

prevail."  June 21 Decl. ¶ 6.  But the holding in Owens concerned only claims brought under 42

---

[3]  De Santis argues that the case of Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006),
bars consideration of the statute of limitations defense.  See June 21 Decl. ¶¶ 12–14.  But
Patterson is distinguishable.  In Patterson, the defendant appeared, raised the statute of
limitations in an answer and a motion for summary judgment, but then failed to assert the
defense during an initial appeal and a subsequent remand.  440 F.3d at 112.  The Second Circuit
found that the defense was forfeited, as the defendant abandoned it by not reasserting it on
remand.  Thus, Patterson is consistent with the cases that recognize a statute of limitations to be
an affirmative defense that may be waived.

[4]  See, e.g., Eriline Co. S.A., 440 F.3d at 656; Bd. of Trs., Sheet Metal Workers' Nat'l
Pension Fund v. N. Park Heating, Co., 2013 WL 596525, at *5 (E.D. Va. Jan. 15, 2013); Koch v.
Rodenstock, 2012 WL 5844187, at *3 n.2 (S.D.N.Y. May 9, 2012); UC Acquisition Corp. v.
Salem Nursing & Rehab Ctr. of Tuskegee, Inc., 2012 WL 95422, at *1 n.1 (M.D. Ala. Jan. 12,
2012); Clement v. United Homes, LLC, 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010);
Latimore v. Schilling, 2008 WL 2421628, at *2 n.4 (S.D.N.Y. June 13, 2008); Agamede Ltd. v.
Life Energy & Tech. Holdings, Inc., 2007 WL 201167, at *2 (E.D.N.Y. Jan. 23, 2007).

9

U.S.C. § 1983.  See 488 U.S. at 236.  As Judge Buchwald previously held, "[b]ecause Jimenez

was not acting under color of state law, she cannot be held liable pursuant to 42 U.S.C. § 1983."

De Santis, 2011 WL 4005331, at *5.  Thus, all that is left in this case are De Santis's state law

claims against Jimenez, which are governed by the limitations periods set forth under New York

law.  See Guerrier v. Quillian, 2011 WL 4916295, at *2–4 (S.D.N.Y. Oct. 14, 2011) (applying

three-year limitations period to 28 U.S.C. § 1983 claims and one-year limitations period to state

law claims of malicious prosecution and false arrest); TADCO Constr. Corp. v. Dormitory Auth.

of N.Y., 700 F. Supp. 2d 253, 273 n.10 (E.D.N.Y. 2010) (same).  False imprisonment, malicious

prosecution, and intentional infliction of emotional distress each have a one-year limitations

period under New York law.  See N.Y. C.P.L.R. § 215(3) (false imprisonment and malicious

prosecution); Patterson, 440 F.3d at 112 n.4 (intentional infliction of emotional distress).

    Turning to the question of the accrual date, a claim for false arrest and false

imprisonment accrues when the plaintiff is released from confinement.  See Roche v. Vill. of

Tarrytown, 309 A.D.2d 842, 843 (2d Dep't 2003) (citing cases); see also Jaegly v. Couch, 439

F.3d 149, 154 (2d Cir. 2006) ("A cause of action for false arrest accrues at the time of

detention . . . .") (citation omitted).  De Santis alleges he was released from custody on July 31,

2006, Compl. ¶ 73, and therefore a timely claim for false arrest had to be filed by July 31, 2007.

    A claim for malicious prosecution accrues on the date the criminal proceedings are

terminated in plaintiff's favor.  See Brownell v. LeClaire, 96 A.D.3d 1336, 1337 (3d Dep't

2012); Stampf v. Metro. Transp. Auth., 57 A.D.3d 222, 223 (1st Dep't 2008); Nunez v. City of

N.Y., 307 A.D.2d 218, 219 (1st Dep't 2003).  According to the complaint, the criminal charges

against De Santis were dismissed on April 26, 2007.  Compl. ¶ 91.  Because April 26, 2008, fell

on a Saturday, De Santis had to commence this action by Monday, April 28, 2008, to bring a

timely claim for malicious prosecution.  See Ferlito v. Cnty. of Suffolk, 2012 WL 3878137, at *6 (E.D.N.Y. Sept. 6, 2012).

Finally, a claim for intentional infliction of emotional distress accrues as soon as it becomes enforceable, or to put it another way, "'when all elements of the tort can be truthfully alleged in a complaint.'"  Lowe v. Hous. Works, Inc., 2013 WL 2248757, at *12 (S.D.N.Y. May 15, 2013) (quoting Dana v. Oak Park Marina, 230 A.D.2d 204, 210 (4th Dep't 1997)).  Where the emotional distress is caused by "a continued series of [defendant's] extreme and outrageous acts[,] . . . the Statute of Limitations does not begin to run until the last actionable act."  Dana, 230 A.D.2d at 210–11 (citations omitted).  Because De Santis alleges that Jimenez committed a series of wrongful acts, his claim for intentional infliction of emotional distress accrued on the date of the last tortious act, which according to the complaint is August 25, 2006 — the date she made misrepresentations to Connors.  See Compl. ¶ 79.  As a result, a timely claim for intentional infliction of emotional distress was required to be filed by Monday, August 27, 2007.

De Santis did not file his complaint until April 26, 2010.  See De Santis, 2011 WL 4005331, at *5.  Thus all of the causes of action that De Santis brought against Jimenez are barred by the statute of limitations.  Moreover, De Santis's claims against Jimenez were brought "well outside the applicable . . . limitations period," Pino, 49 F.3d at 54, as De Santis interposed them at least two years after the expiration of the one-year limitations period.

C.   Equitable Tolling and Equitable Estoppel

In the Court's June 7, 2013 order, the Court alerted De Santis that on the face of the complaint his claims against Jimenez were untimely and granted De Santis an opportunity to present arguments why his claims should not be dismissed.  See June 7 Order at 1.  In particular, the Court noted the existence of the doctrines of equitable tolling or equitable estoppel.  Id. at

11

1–2.  In his response, De Santis does not argue that either doctrine is applicable.  See generally

June 21 Decl.  However, in light of De Santis's pro se status, the Court will sua sponte consider

these doctrines.

   Equitable estoppel and equitable tolling under New York law may "defeat a statute of

limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to

refrain from filing a timely action."  Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (citations

and internal quotation marks omitted).  Equitable estoppel applies where the plaintiff is aware of

"the existence of his cause of action but the defendant's conduct caused him to delay in bringing

his lawsuit."  Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985)

(citing cases); Heins v. Potter, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003) ("[E]quitable estoppel

does not apply unless a plaintiff knows of his cause of action and is unable to assert his rights.").

Equitable tolling, on the other hand, is applicable "where the plaintiff is ignorant of his cause of

action" as a result of concealment.  Cerbone, 768 F.2d at 49–50; Ruso v. Morrison, 695 F. Supp.

2d 33, 47 (S.D.N.Y. 2010) (applying under New York law).

   Under either doctrine, "[d]ue diligence on the part of the plaintiff in bringing an

action . . . is an essential element of equitable relief."  Abbas, 480 F.3d at 642 (citation, internal

quotation marks, and brackets omitted); accord Koch v. Christie's Int'l PLC, 699 F.3d 141, 157

(2d Cir. 2012) ("Reasonable diligence is a prerequisite to the applicability of equitable tolling.");

Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (plaintiff must bring

action within "reasonable time after the facts giving rise to" equitable estoppel).  Plaintiff bears

the burden both to "articulate . . . acts by defendants that prevented him from timely

commencing suit" and to show that the action was commenced "within a reasonable period of

time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to

12

be operational." Abbas, 480 F.3d at 642 (citations, internal quotation marks, and brackets omitted).

Here, there are no allegations in the complaint or any other filings made in conjunction with this motion suggesting that the conduct of Jimenez, or any other person, prevented De Santis from commencing this action within the limitations period.  Nor has De Santis shown that he acted with diligence.  Consequently, neither equitable estoppel nor equitable tolling apply. See Castro v. United Sec. Inc., 2011 WL 4916402, at *2 (S.D.N.Y. Oct. 17, 2011) ("[I]n contexts where pro se plaintiffs have provided no explanation for their failure to timely file, or no evidence of an attempt to diligently exercise their legal rights, courts have denied equitable tolling.") (citations omitted).

Because the statute of limitations for all of the causes of action brought against Jimenez expired between two and three years prior to commencement of this action and De Santis has not otherwise presented a viable theory to prevent the running of the limitation periods,  this action is time-barred.

III.     CONCLUSION

The default judgment (Docket # 56) should be vacated and the complaint should be dismissed in its entirety.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. J. Paul Oetken, at 40 Centre Street, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Oetken.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 8, 2013
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Rocco Peter A. De Santis
347 5th Ave.
No. 1402–523
New York, NY 10016

Yoalis M. Jimenez
346 E. 59th Street
Apartment 14
New York, NY 10022

Yoalis M. Jimenez
125 Quincy Street,
Apartment 1
Passiac, NJ 07055

14