UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                               :

ROCCO PETER DE SANTIS,                    :

                          Plaintiff,      :

                                                 :      10 Civ. 3508 (JPO)

                -v-                          :

                                                 :      <u>OPINION AND ORDER</u>

THE CITY OF NEW YORK et al.,            :

                        Defendants.  :

                                                 :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Pro se Plaintiff Rocco Peter De Santis sued his former girlfriend, Yoalis M. Jimenez, for malicious prosecution, false arrest and imprisonment, and intentional infliction of emotional distress after she reported that he had stalked and harassed her. Following Jimenez's report, De Santis was arrested and arraigned on stalking and aggravated harassment charges, which were later dismissed. Because Jimenez has defaulted, the record is thin, making it difficult to evaluate the underlying facts. However, divining the truth in the dispute between De Santis and Jimenez is not required to resolve this case. Rather, the critical question is whether De Santis should obtain a default judgment and recover monetary damages against Jimenez notwithstanding the fact that his tort claims against her are barred by the statute of limitations, simply because Jimenez failed to appear and assert a clearly meritorious statute of limitations defense.

       For the reasons that follow, this Court agrees with the well-reasoned Report and Recommendation by Magistrate Judge Gabriel W. Gorenstein and holds that a default judgment issued under these circumstances does not serve the interests of justice. Accordingly, the default judgment previously entered in this case is vacated and this case is dismissed.

1

I.   **Background and Procedural Posture**[1]

Plaintiff does not dispute Magistrate Judge Gorenstein's characterization of the facts, which are summarized below.

   A.   **The Criminal Case**

A criminal case was initiated against De Santis on July 17, 2006, when Jimenez reported to the New York Police Department ("NYPD") that De Santis was stalking and harassing her. According to De Santis, he and Jimenez dated from October 2005 until July 2006.

At the NYPD squadron, Jimenez reported that the relationship had ended in November 2005, that she later instructed De Santis not to contact her, and that he continued to text, call, and email her in June and July of 2006, causing "annoyance and alarm, harm . . . [and] fear that her employment was threatened." *De Santis v. City of New York*, 10 Civ. 3508 (JPO) (GWG), 2013 WL 3388455, at *1 (S.D.N.Y. July 8, 2013) [*hereinafter* "Report"] (citing Dkt. No. 1 ("Complaint") ¶ 124).

De Santis claims that Jimenez never asked De Santis to stop contacting her, and that they were dating and in regular contact until July 2006. De Santis further claims that Jimenez intentionally filed false charged in an attempt to extort him—specifically, he claims that Jimenez called him after filing her report and offered to withdraw her accusations in exchange for money.

Jimenez did not withdraw her report. Based on her allegations, Detective Stephen Gurniak and his partner arrested De Santis on July 30, 2006. De Santis was detained until 3:00 p.m. the next day, July 31, 2006, when he was arraigned on multiple stalking and harassment counts, issued a restraining order, and released.

---

[1] The following facts, unless otherwise stated, are taken from the Complaint (Dkt. No. 1).

On August 25, 2006, Jimenez met with Ryan Connors, an Assistant District Attorney ("ADA") assigned to De Santis's case. Jimenez provided a sworn statement alleging more details about De Santis's stalking and harassment. De Santis claims that both Jimenez and Connors knew that a substantial portion of Jimenez's allegations were false. However, based on Jimenez's sworn statement, Connors added five new criminal charges to De Santis's indictment.

Trial preparations continued until April 26, 2007, when the case against De Santis was dismissed on speedy trial grounds.

B.     **The Complaint and Motion to Dismiss**

On April 27, 2010, De Santis filed a Complaint initiating the present case against numerous defendants, including, in addition to Jimenez, Detective Gurniak, ADA Connors, the City of New York, the New York County District Attorney, and the Office of the Chief of the NYPD ("City defendants"), among others. De Santis's claims against the City defendants were brought under 42 U.S.C. § 1983; his state tort claims against Jimenez were brought pursuant to diversity jurisdiction under 28 U.S.C. § 1332.

All claims against the City defendants were dismissed on August 29, 2011. *De Santis v. City of New York*, 10 Civ. 3508 (NRB), 2011 WL 4005331 (S.D.N.Y. 2011).[2] Applying a three-year residual statute of limitations to the § 1983 claims, the Court held that the April 27, 2010 Complaint was filed past the statute of limitations period for the false arrest claims, which accrued during De Santis's July 31, 2006 arraignment. *Id.* at *3-4. Accordingly, the false arrest claims were dismissed. *Id.* at *4. The malicious prosecution claims, which accrued on April 26,

---

[2] This case was assigned to Judge Naomi Reice Buchwald before being reassigned, on September 28, 2011, to the undersigned.

2007, fell outside the three-year period by just one day. *Id.* at *4-5. The Court applied equitable tolling to overcome the statute of limitations bar, but ultimately dismissed the malicious prosecution claims on the merits and on prosecutorial immunity grounds. *Id.* at *5-11. The Court declined to exercise supplemental jurisdiction to hear the emotional distress tort claims, but noted that those claims were likely time-barred. *Id.* at *11. Ultimately, the Court dismissed all of De Santis's claims against the City defendants, applying a combination of statutes of limitations, merits, and immunity defenses.

The claims against Jimenez, who had not appeared or raised a defense, were conditionally preserved. At the motion to dismiss stage, the Court was skeptical that Jimenez had been properly served, and thus did not explore the merits of those claims. *Id.* at *5-6. Rather, the Court granted De Santis thirty days to demonstrate that valid service had been made and that he had good cause for serving Jimenez outside the allotted 120-day period. The Court also noted, however, that "dismissal may be appropriate" based on Second Circuit precedent for "dismiss[ing] an action sua sponte . . . where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." *Id.* at *6 n.2 (quoting *Walters v. Indus. and Commercial Bank of China*, 2011 WL 2643697 (2d Cir. 2011) (internal quotations omitted)).

### C.     Default Judgment Against Jimenez

After the City defendants were dismissed, De Santis focused on obtaining a default judgment against Jimenez. De Santis submitted a statement responding to the service defects described above.[3] (Dkt. No. 34). His statement failed to legitimate his prior attempt to serve

---

[3] As this Court previously noted:

4

Jimenez.  *De Santis v. City of New York*, 10 Civ. 3508 (JPO), 2011 WL 5109231 (S.D.N.Y. 2011).  However, the Court granted him an additional 120 days, or until December 13, 2011, to serve the Summons and Complaint.  *Id.* at *3.

The Court then received an Affidavit demonstrating that Jimenez had been served at 9:09 p.m. on December 12, 2011.  (Dkt. No. 36).  The process server claimed to have left the documents with an unnamed person at Jimenez's address, and to have subsequently mailed the documents to Jimenez.[4]  After this service, Jimenez still did not appear.  On December 18, 2012, this Court entered an Order for Default Judgment against Jimenez (Dkt. No. 53).[5]  The case was then referred to Magistrate Judge Gorenstein for an inquest on damages.

---

> This Reply came after the September 26, 2011, deadline imposed by Judge Buchwald['s August 29, 2011 Order].  Plaintiff . . . calculated the 30–day period as starting from the time he received Judge Buchwald's Memorandum and Order in the mail, giving him until October 5.  The Pro Se Office initially refused Plaintiff's Reply for filing because it lacked any affirmation of service.  However, mindful that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, the Court now accepts Plaintiff's . . . filing, despite his failure to meet the appropriate deadline and to serve the Reply on Defendant Jimenez.

*De Santis v. City of New York*, 10 Civ. 3508 (JPO), 2011 WL 5109231 (S.D.N.Y. 2011) (internal quotations and citations omitted).

[4] The circumstances surrounding service raise additional questions about the validity of service upon Jimenez.  For example, the Affidavit of Service contains the following statement: "[the server] decided to serve the papers by suitable age and discretion not knowing whether the defendant would present herself for personal in-hand delivery, as the time to serve would elapse on 12/13/11."  (Dkt. No. 36).  This indication that the process server was strongly motivated by the impending service deadline suggests that improper shortcuts may have been taken.  Additionally, the Affidavit does not provide any basis for inferring that the unnamed person who received service was Jimenez's co-resident, as required by Federal Rule of Civil Procedure 4(e)(2)(B).  The details of service, however, are tangential to the resolution of this case.

[5] The Motion for Default Judgment lacked proof that the Motion had been served upon Jimenez.

### D. Report and Recommendation and De Santis's Objections

In the course of conducting the inquest, Magistrate Judge Gorenstein concluded that the default judgment should be vacated. In an Order dated June 7, 2013, Judge Gorenstein noted that "[p]rior to entering a default judgment . . . the Court must assess whether the allegations in the complaint, if accepted as true, entitle [P]laintiff to relief as a matter of law." (Dkt. No. 58 at 1 (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).) Judge Gorenstein stated that "it appears from the face of the complaint that all of [P]laintiff's claims were filed long after the statute of limitations expired" and granted De Santis "the opportunity to provide to the Court any information or argument as to why his claims should not be dismissed because they are barred by the statute of limitations." (Dkt. No. 58 at 1.) Over De Santis's objections, Magistrate Judge Gorenstein concluded in his Report that the Court should vacate the default judgment and dismiss De Santis's time-barred claims sua sponte.

De Santis raises three objections to the Report. First, he argues that the proper statute of limitations is the three-year period provided for unspecified personal injury actions pursuant to N.Y. C.P.L.R. 214(5), rather than the one-year period that the Report applied to each of his claims against Jimenez. Second, he argues that Jimenez forfeited the statute of limitations defense. Third, he argues that the Court should not raise the statute of limitations issue sua sponte. De Santis previously raised the first two arguments in response to Magistrate Judge Gorenstein's June 7, 2013 Order. The Court addresses each of De Santis's objections below.

## II. Discussion

### A. Standard of Review

Where there are objections to a magistrate judge's report and recommendation, the district court reviews the issues de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall

6

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, absent clear error, the district court may adopt the magistrate judge's reasoning on issues to which objections were not raised. *See* Fed. R. Civ. P. 72(b), Adv. Comm. Notes (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Borcsok v. Early*, 299 F. App'x 76, 77 (2d Cir. 2008) ("The District Court then reviewed the magistrate judge's report and recommendation for clear error and, finding none, adopted the report . . . ."); *cf.* § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . [where] the magistrate judge's order is clearly erroneous or contrary to law."). Finding no errors in the Report, the Court hereby adopts the portions that were not subject to De Santis's objections, and now turns to the issues raised by the objections.

B. **Application of the Statute of Limitations**

De Santis's April 27, 2010 Complaint was filed well past the one-year statute of limitations that applies to his claims. De Santis's first objection to the Report is that a three-year statute of limitations should apply under New York Civil Procedure Law (N.Y. C.P.L.R.) 214(5). However, that provision establishes a three-year default statute of limitations, which applies only to "an action . . . for a personal injury *except as provided in . . . [section] 215*." *Id.* (emphasis added). The three-year period does not apply in this case because the three claims in De Santis's Complaint—malicious prosecution, false arrest and imprisonment, and emotional distress—are all governed by the one-year statute of limitations provided by N.Y. C.P.L.R. 215, as detailed below.

### 1.     Malicious Prosecution

Under N.Y. C.P.L.R. 215(3), malicious prosecution claims have a one-year statute of limitations.[6]  The claim begins to accrue on the date that the criminal proceedings are terminated in the plaintiff's favor.  *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor . . . .").  Charges against De Santis were dismissed on April 26, 2007.  Therefore, the statute of limitations expired on Monday, April 28, 2008.

### 2.     False Arrest and Imprisonment

Under N.Y. C.P.L.R. 215(3), false arrest and imprisonment claims also have a one-year statute of limitations.[7]  The claim begins to accrue on "the date the plaintiff . . . [is] released from confinement."  *Roche v. Vill. of Tarrytown*, 766 N.Y.S.2d 46, 46 (N.Y. App. Div. 2d Dep't 2003) (citing cases).  De Santis was released on July 31, 2006, after his arrest the previous night.  Therefore, the statute of limitations expired on Tuesday, July 31, 2007.

### 3.     Intentional Infliction of Emotional Distress

Under judicial interpretations of N.Y. C.P.L.R. 215(3), emotional distress claims have a one-year statute of limitations.  *Patterson v. Balsamico*, 440 F.3d 104, 112 n.4 (2d Cir. 2006) ("The New York courts have held that a claim for damages for intentional infliction of emotional distress is subject to the one-year statute of limitations in C.P.L.R. Section 215(3)."); *Jemison v.*

---

[6] The statute provides: "The following actions shall be commenced within one year: . . . an action to recover damages for assault, battery, *false imprisonment*, [and] *malicious prosecution* . . . ." N.Y. C.P.L.R. 215 (emphasis added).

[7] *Id*.

*Crichlow*, 531 N.Y.S.2d 919, 922 (N.Y. App. Div. 2d Dep't 1988) ("[P]laintiffs' . . . cause of action for intentional infliction of emotional distress is also governed by a one-year Statute of Limitations . . . ."), *aff'd*, 543 N.E.2d 78 (1989). The claim begins to accrue "on the date of injury." *Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (N.Y. App. Div. 2d Dep't 2012). Where the claim is based upon a series of injuries, "the Statute of Limitations does not begin to run until the last actionable act." *Dana v. Oak Park Marina, Inc.*, 660 N.Y.S.2d 906, 911 (N.Y. App. Div. 4th Dep't 1997). Jimenez's last "actionable act" was her August 25, 2006 sworn statement before ADA Connors. Therefore, the statute of limitations period expired on Monday, August 27, 2007.

### 4. Summary

The foregoing analysis demonstrates that De Santis's claims against Jimenez were filed well past the relevant statute of limitations periods had expired. His malicious prosecution, false arrest and imprisonment, and emotional distress claims expired on April 28, 2008, July 31, 2007, and August 27, 2007, respectively. However, De Santis did not file his claim until April 27, 2010, and did not serve Jimenez until December 12, 2011, which was over three and a half years after his claims had expired.[8] De Santis did not object to the Report's conclusion that equitable tolling and estoppel are inapplicable, and the Court adopts that well-reasoned conclusion. Therefore, there is an absolute statute of limitations defense to each of De Santis's claims against Jimenez.

---

[8] "The theory [behind statutes of limitations] is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims . . . prevail[s] over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944). The additional twenty months that elapsed between the date when the Complaint was filed and the date when it was served upon Jimenez heighten the notice and timeliness concerns in this case.

### C. Sua Sponte Dismissal

The remaining question, posed by De Santis's second and third objections, is whether the Court should dismiss De Santis's time-barred claims sua sponte, even though Jimenez defaulted and failed to present a defense.

"Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule." *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999). Among district courts' implicit powers is the authority to dismiss time-barred claims sua sponte. *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (listing statute of limitations grounds among acceptable bases for sua sponte dismissal by district courts); *Snider*, 199 F.3d at 112 (same); *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim . . . . There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds . . . [where] the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted."), *cert. denied*, 451 U.S. 908 (1981). The facts alleged in De Santis's Complaint firmly establish the statute of limitations defense. Therefore, under the standard set forth by the Second Circuit, this case presents the possibility of sua sponte dismissal on statute of limitations grounds.

Having established that the Court has the power to dismiss De Santis's time-barred claims sua sponte, the Court must determine whether it should exercise that power. While district courts do not routinely dismiss time-barred claims sua sponte, the reasons for this

practice do not apply with the same force in cases where defendants have defaulted.[9] "The principle that the statute of limitations should not ordinarily be raised sua sponte arises from the adversarial nature of our justice system, which presumes that parties are responsible for raising their own defenses." Report, 2013 WL 3388455, at *3 (internal quotations omitted). The adversarial ideal motivating the presumption against sua sponte dismissal is simply unobtainable in default judgment cases. "It is well established that default judgments are disfavored" precisely because they do not allow "for cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). In fact, in default judgment cases, courts are required to approximate the adversarial model by independently evaluating whether the Complaint establishes liability as a matter of law.[10] *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984) ("[T]he court [may] require [P]laintiff to produce evidence in support of the claims before entering a [default]

---

[9] De Santis relies on *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006), in his objections to the Report, but that case is distinguishable because it did not involve a default judgment. In *Patterson*, the defendant, Balsamico, appeared, was represented, and went to trial without raising the statute of limitations defense, thereby forfeiting the defense. A default judgment presents the opposite scenario. Furthermore, in *Balsamico*, the Second Circuit noted that the "Court has discretion to decide the merits of a forfeited claim or defense where the issue is purely legal and there is no need for additional fact-finding or where consideration of the issue is necessary to avoid manifest injustice." *Id.* at 112. Because this case fits both of those conditions, *Balsamico* is inapplicable, and it is appropriate for the Court to consider the statute of limitations defense sua sponte in this case.

[10] In this case, although the Court raises the statute of limitations issue sua sponte with respect to De Santis's claims against Jimenez, De Santis had an opportunity to oppose those arguments in an adversarial setting in the context of the motion filed by the City defendants, and he had a second opportunity to oppose those arguments in his response to Magistrate Judge Gorenstein's Order of June 6, 2013. Therefore, De Santis had ample opportunity to oppose the statute of limitations defense.

judgment."), *cert. denied*, 469 U.S. 874.  Due to the unique circumstances that they present, default judgments overcome the presumption that "the parties [are] responsible for raising their own defenses." *United States v. Mitchell*, 518 F.3d 740, 749 (10th Cir. 2008).

Parties are "not entitled to a default judgment as of right, even when defendant is technically in default."  C. Wright & A. Miller, 10A Fed. Prac. & Proc. § 2685 (3d ed.).  Courts exercise discretion in deciding when to set aside default judgments.  F.R.C.P. 55(c) ("The court may set aside an entry of default for good cause . . . ."); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for . . . default judgments and relief from the same under Rule 55(c) are left to . . . district court[s] because [they are] in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").  "In considering whether to set aside a default, district courts are to consider . . . the existence of a meritorious defense." *Pagan v. Corr. Med. Servs.*, 11 Civ. 1357 (ER), 2012 WL 2036041, at *8 (S.D.N.Y. 2012).

The statute of limitations arguments are clearly meritorious defenses to De Santis's claims against Jimenez.  If those arguments were raised on a Motion to Vacate Default Judgment or on appeal, they would prevail.  While the Court is mindful of the special solicitude afforded to pro se plaintiffs, that consideration does not bar sua sponte dismissal under these circumstances. *See Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) (finding sua sponte dismissal of a pro se case "especially appropriate" when a Complaint is over two years late, "there are no applicable tolling provisions . . . , [and there are] no facts indicating a continuous or ongoing violation").  Furthermore, "the defaulting defendant . . . should not be burdened with a judgment on an insufficient complaint."  Report, 2013 WL 3388455 at *4.   Accordingly, the Court finds good

cause to vacate the default judgment and dismiss the claims against De Santis as barred by the applicable statutes of limitations.

### III.     Conclusion

What De Santis has won is not a default judgment entitling him to damages but rather a default judgment entitling him to force Jimenez to incur the cost of defending against a clearly time-barred lawsuit.  In the circumstances of this case, such a judgment not only burdens the Defendant, but also burdens the legal system and fails to serve the interests of justice.  For the reasons set forth above and those in Magistrate Judge Gorenstein's Report and Recommendation, the default judgment against Jimenez will be vacated and the claims dismissed.

Accordingly, the Report and Recommendation is hereby ADOPTED, the objections are OVERRULED, the default judgment previously entered in this case (Docket No. 56) is VACATED, and the claims are DISMISSED as untimely.

The Clerk of the Court is directed to close this case.


SO ORDERED.

Dated: January 22, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge